FILED

2021 Sep-23  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **MIA PAULETTE JOLLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:20-cv-00646-LCB** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | | |
| **Defendant.** | | |

## MEMORANDUM OPINION

On May 7, 2020, the Plaintiff, Mia Paulette Jolly, filed a Complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The Commissioner filed an Answer on August 17, 2020. Jolly filed a Brief in Support of her position on October 1, 2020, and the Commissioner filed a Response on October 28, 2020.  Jolly, in turn, filed a Reply Brief on November 11, 2020. Additionally, the Court held oral argument on this appeal on September 2, 2021. Accordingly, the issue is now fully briefed and is ripe for review. For the reasons that follow, the Commissioner's final decision is **AFFIRMED**.

## BACKGROUND

Jolly protectively filed Applications for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income ("SSI") on April 22, 2016, alleging

disability beginning May 5, 2016. The claim was denied initially on September 8, 2016 and was subsequently denied on reconsideration on November 30, 2016. Jolly then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 13, 2018. At the hearing Jolly was represented by counsel and testified, as did a vocational expert. The ALJ subsequently issued an unfavorable decision. Jolly then requested review of the ALJ's decision by the Appeals Council, which denied the request on March 4, 2020. This lawsuit followed.

## I.      The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. 17-30).[1] In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 C.F.R. § 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise,

---

[1] "Tr" denotes the page number assigned in the administrative record filed by the Commissioner on August 17, 2020. *See* (Docs. 8-3 to 8-13).

the ALJ will proceed to step two. In the present case, the ALJ found that Jolly had not engaged in substantial gainful activity since May 5, 2016. (Tr. 19). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities. . . ." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Jolly had the following severe impairments: carpal tunnel syndrome, degenerative disc disease of the lumbar spine, mild osteoarthritis of the right hip, and bilateral degenerative joint disease of the knees. (Tr. 19). The ALJ found that Jolly's obesity and depressive disorder were not severe.

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found the Jolly's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four.

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. § 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Jolly's case, the ALJ found that she did not have the RFC to perform her past work as an electronics tester or molding machine operator. (Tr. 28). Therefore, he proceeded to the final step in the evaluation process.

At the final step, the ALJ considers whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant is able to do other work, she is not disabled. If a claimant is unable to do such work, then she is disabled. According to the ALJ, Jolly had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain limitations. (Tr. 22). After hearing testimony from a VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Jolly would be able to perform given her RFC, age, education, and work experience. (Tr. 29). Specifically, the VE opined that Jolly could perform the work of representative occupations such as a presser or inspector. *Id.* Therefore, the ALJ found, Jolly was not disabled as defined by the Social Security Administration.

## LEGAL STANDARD

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### I.    Jolly's arguments

Jolly contends that the ALJ made two reversible errors in issuing his unfavorable opinion. First, Jolly argues that the ALJ erred by discounting the medical opinion of Dr. Davachi, finding the opinion of agency expert Dr. Williams persuasive, and failing to request a consultative examination to interpret the evidence in the record. Second, Jolly contends that her use of a cane was medically necessary and should have been considered by the ALJ in determining her RFC.

**A. Jolly is not entitled to relief on her contentions that the ALJ improperly weighed medical opinion evidence.**

In her brief, Jolly first contends that the ALJ erred by affording Dr. Khosrow Davachi's medical opinion little weight. Specifically, Jolly argues that the ALJ's analysis is not supported by substantial evidence in that Dr. Davachi's opinion was not given sufficient weight, and because the ALJ relied on "an old non-examining opinion and a lay interpretation of the evidence." (Doc. 10 at 17).

Jolly's argument about the opinion of Dr. Davachi is three-fold. First, Jolly contends that the ALJ erred because the ALJ was mistaken as to Dr. Davachi's role in treating the claimant. (Doc. 10 at 18). At oral argument, counsel for the Commissioner conceded that the ALJ mistakenly referred to Dr. Davachi as Jolly's therapist in his analysis. But the ALJ's decision to discount the medical opinion of Dr. Davachi was not apparently impacted in a meaningful way by the ALJ's misidentification. And even if the misidentification did factor into the ALJ's analysis, for the reasons stated below, the error was harmless because there is substantial evidence in the record supporting the ALJ's ultimate finding.

Second, Jolly avers that the ALJ erred by giving little weight to Dr. Davachi's opinion because it was provided on a fill-in-the-blank form. The ALJ points to Jolly's testimony where "the claimant testified that she told the doctor the answers to the questions that were contained on the checked off form." (Tr. 23). Ultimately,

the ALJ found that Dr. Davachi's opinion was not persuasive because it was unsupported by any objective evidence or examination. (Tr. 26).

In general, an ALJ must give a treating physician's opinion "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Good cause to discount a treating physician's opinion exists where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the physician's own medical records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Here, the ALJ discounted Dr. Davachi's opinion as conclusory because it was a fill-in-the-blank form and was unaccompanied by an examination or any treatment notes. (Tr. 26). This Court has found that similar fill-in-the-blank forms are not, alone, sufficient to support a physician's opinion. *Sandridge v. Comm'r of Soc. Sec.*, 2020 WL 7025075 at *4 (N.D. Ala. 2020); *see also, e.g., Foster v. Astrue*, 410 Fed. Appx. 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony."). The fact that a physician's opinion is contained in a fill-in-the-blank form is not reason alone to discount the opinion wholesale. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1261 (11th Cir. 2019). But the ALJ properly discounts an opinion when "it

could not be said to be 'substantiated by any clinical or laboratory findings.'" *Id.* at 1260 (quoting *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (per curiam)).

In this case, there is substantial evidence to support the ALJ's decision to discount the opinion of Dr. Davachi because it was a fill-in-the-blank form not supported by objective evidence. First, and most importantly, Dr. Davachi did not identify any objective evidence that supported his findings on the fill-in-the-blank form. (Tr. 506-07). Rather, the form merely presents conclusions in short form with no citation to any records or accompanying physical examination. Additionally, the record contains just one office visit between Jolly and Dr. Davachi. (Tr. 608-10). At that visit, Dr. Davachi's examination of Jolly was unremarkable. *Id.*

At oral argument, Jolly's counsel contended that because Dr. Davachi was apparently carbon copied on a number of medical records in the record, he had sufficient evidence supporting the opinions on the fill-in-the-blank form. But, crucially, Dr. Davachi's opinions do not cite nor reference any medical record. (Tr. 506-07). The form is devoid of analysis and presents its findings in short form. Even if Dr. Davachi had access to the records that he was apparently carbon copied on, it is, at best, unclear if he relied on them in filling out the form. Ultimately, in reviewing an ALJ's decision, the Court leaves questions of weight to the ALJ. *Moore*, 405 F.3d at 1211. And when an ALJ finds that an opinion is conclusory, they can discount it in their analysis. *Winschel*, 631 F.3d at 1179. Here, in citing the

factors and the evidence above, the ALJ had more than a scintilla of evidence to support his decision to discount Dr. Davachi's opinion because it was a conclusory fill-in-the-blank form unsupported by analysis or evidence.

Third, Jolly argues that Dr. Davachi's opinion was due more weight under 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) because other evidence in the record supported Dr. Davachi's opinion. Specifically, Jolly contends that Dr. Davachi's opinion was due greater weight because the opinion was consistent with other objective evidence from the examinations of other physicians in the record. (Doc. 10 at 20). When evaluating a medical opinion, an ALJ analyzes the opinion by the factors provided by the regulations in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The factors that an ALJ considers in weighing medical opinions include: treatment relationship with the physician; supportability of the opinion by evidence presented by the physician; consistency with the record as a whole; specialization of the physician; and other factors brought to the ALJ's attention. *Id.* As explained above, an ALJ may discount the opinion of a treating physician when there is good cause. *Phillips*, 357 F.3d at 1240.

Here, the ALJ's decision to discount the medical opinion of Dr. Davachi was supported by substantial evidence. Importantly, Jolly does not argue that the ALJ lacked good cause to discount Dr. Davachi's opinion. Rather, Jolly argues that the ALJ should have afforded Dr. Davachi's opinion greater weight strictly because it

was consistent with other evidence in the record. But consistency is just one of several factors that an ALJ is required to consider when evaluating a medical opinion. An ALJ must also consider the treatment relationship, with particular focus on the depth and frequency of care between the patient and the physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ, in this case, noted that Dr. Davachi was only Jolly's physician for a short period of time, and that the record indicated that Jolly had visited Dr. Davachi a small number of times. (Tr. 26). Additionally, the regulations mandate that an ALJ consider if the physician's opinion is well-supported by objective evidence and observations. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). As discussed above, the ALJ in this case did not err in finding that Dr. Davachi's opinion was not well-supported by evidence. Ultimately, Jolly's argument asks the Court to reweigh evidence because she disagrees with the ALJ's finding. But this Court will not "reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Phillips*, 357 F.3d at 1240 n.8. Because the record contains sufficient evidence to support the ALJ's decision to discount Dr. Davachi's opinion under the factors enumerated in the regulations, Jolly is not entitled to relief on this issue.

In addition to her argument concerning Dr. Davachi, Jolly contends that the ALJ erred by giving undue weight to non-examining source opinions. Primarily, Jolly focuses her argument on the fact that State agency consultant Dr. Donald

Williams gave an opinion without access to the full record. In particular, Jolly contends that the ALJ erred in giving weight to Dr. Williams because Dr. Williams issued his opinion before the bulk of the record was available and his explanation for his opinion was not detailed. (Doc. 10 at 21).

The same criteria are used under the regulations to evaluate medical opinions from non-examining physicians as for treating physicians. That is, an ALJ will evaluate an opinion from an agency expert who has not examined the claimant using the same five factors found in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). And on review, all matters of weight are left to the ALJ. *Moore*, 405 F.3d at 1211. So, if there is substantial evidence in the record to support the ALJ's finding that a medical opinion was due weight under the factors provided in the regulations, the Court will not disturb the conclusion.

Here, Jolly argues specifically that Dr. Williams's opinion was not due weight because there was not enough evidence for him to consider. (Doc. 10 at 21). That is, Dr. Williams's opinion is insufficient because there was not enough evidence to satisfy factor (c)(3) under the regulations regarding supportability. This argument fails for two reasons. First, the regulations do not require that an agency expert have access to the entire administrative record in order to render an expert opinion. Rather, the regulations simply state that, with respect to non-examining physicians, "the weight we will give their medical opinions will depend on the degree to which they

11

provide supporting explanations for their medical opinions." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The ALJ determined that the explanations provided by Dr. Williams supported his medical opinion, and thus, gave Dr. Williams weight in his analysis. (Tr. 27). Second, even if the Court agreed that the ALJ gave Williams too much weight under factor (c)(3), the ALJ considered Dr. Williams's opinion under the other factors provided by the regulations. Most significantly, the ALJ found that Dr. Williams's opinion was supported by and consistent with the objective medical evidence in the record. *Id.* The ALJ pointed to treatment notes from Dr. Jamshidi which showed that during the relevant period Jolly's physical examinations were within normal limits. (Tr. 27-28). Jolly routinely had a normal range of motion and her physical examinations were unremarkable. *Id.* Accordingly, sufficient evidence in the record supports the ALJ's decision to find Dr. Williams's opinion persuasive. Thus, Jolly is not entitled to relief on this issue.

Finally, Jolly argues that the ALJ committed error by making findings based on his own lay analysis and not by ordering a consultative examination. That is, Jolly contends that the ALJ analyzed records and drew conclusions for himself where a medical professional should have analyzed the records for the ALJ. (Doc. 10 at 21-24). At oral argument, Jolly's counsel further explained that the ALJ's RFC determination is not supported by substantial evidence because Dr. Williams's opinion was not substantial evidence on its own. Simply, Jolly avers that the ALJ

was not qualified to interpret the evidence in the record and make the RFC determination, and was therefore required to request a consultative examination from an expert to interpret the medical evidence.

In her Reply, Jolly cites *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15 (1st Cir. 1996) with *Castle v. Colvin*, 557 Fed. Appx. 849 (11th Cir. 2014) to argue there is a distinction between so-called commonsense decisions and more complex medical judgments of impairment. (Doc. 13 at 1-2). Jolly argues that while an ALJ is qualified to make an RFC finding without medical opinions in a commonsense case, more complicated medical issues require an ALJ to seek an advisory opinion before making any findings. But in this Circuit, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). When determining a claimant's RFC, "although the Commissioner will consider opinions from medical sources . . . the final responsibility for deciding those issues is reserved to the Commissioner." *Pate v. Comm'r of Soc. Sec.*, 678 Fed. Appx. 833, 834 (11th Cir. 2017). Further, this Court has found that "[t]here is no requirement that the RFC assessment 'be supported by the assessment of an examining or treating physician.'" *Taylor v. Berryhill*, 2019 WL 3817639 at *4 (N.D. Ala. 2019) (quoting *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055-56 (S.D. Ala. 2016)).

Here, the record contained sufficient evidence for the ALJ to make an informed decision of Jolly's RFC. Most importantly, Dr. Williams's and Dr. Davachi's opinions were not the only evidence considered by the ALJ. Rather, the ALJ's analysis shows that he considered the record as a whole. (Tr. 22-28). In fact, the ALJ's discussion of the record and the objective evidence is exhaustive. The ALJ considered Jolly's testimony, examination notes from Dr. Dianne Bennett-Johnson which were unremarkable, treatment notes from Emory Eastside Medical Center which were unremarkable, treatment notes from Mastery Southern Maryland Hospital which were unremarkable, treatment notes from Oxon Hills Orthopedics, treatment notes from Dr. S. Jamshidi, treatment notes from Community Free Clinic which were unremarkable, treatment notes from Crestwood Hospital which were unremarkable, and treatment notes from Madison Hospital which were unremarkable. *Id.*

Ultimately, the ALJ pointed to records showing that Jolly received routine care, that her examinations were broadly normal, and her mobility and neurological functions were within normal limits. The records cited by the ALJ are relatively straightforward and are not outside the realm of comprehension of an expert in determining claimant RFCs. Instead, the records are typical of the evidence that an ALJ might consider when making an RFC determination and a far cry away from the kind of complex data and evidence at issue in *Manso-Pizarro*. In short, the ALJ

considered a breadth of understandable and comprehensible evidence which did not indicate a significant impairment and supported his RFC finding, so there was substantial evidence supporting his determination. Therefore, Jolly is not entitled to relief on this issue.

### B. Jolly is not entitled to relief on her contention that the ALJ failed to consider her use of a cane.

Jolly's second point of error contends that the ALJ failed to consider evidence of Jolly's use of a cane in evaluating her limitations. (Doc. 10 at 24-25). Jolly contends that if the ALJ properly considered her cane use, she would have been ruled disabled. Primarily, Jolly argues both in her brief and through her counsel at oral argument that her cane use was medically necessary because she was prescribed a cane for walking and the record includes notations of cane use. *Id.*

Like any determination, if there is substantial evidence supporting the ALJ's finding that a cane was not medically necessary, this Court must affirm. *Henry*, 802 F.3d 1264. In considering cane use in making an RFC determination, Social Security Ruling 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7.

Jolly points to treatment notes from PA Sara Makrinos stating Jolly was prescribed a 4-pronged cane to assist with ambulation. (Tr. 648). Jolly also cites that PA Makrinos noted on three occasions that Jolly "will continue using a 4 pronged

cane to aid her with ambulation to avoid any type of fall." (Tr. 640, 642, 645). On the other hand, the ALJ cited records from Oxon Hill Orthopedics, covering a period from December 2016 through April 2018, where it was never noted that Jolly needed a cane for mobility. (Tr. 25, 532-63). Further, routine progress notes from Oxon Hill during that time period indicate that Jolly could walk well and had a normal gait. (Tr. 27, 532, 538, 544). Additionally, the ALJ cited a note from Kure Pain Management which stated that Jolly did not use an assistive device. (Tr. 27, 622). In short, the ALJ has pointed to more than a scintilla of evidence supporting his finding that Jolly's cane use was not medically necessary. Therefore, because the ALJ's finding was supported by substantial evidence, Jolly is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. A final order will be entered separately.

**DONE** and **ORDERED** September 23, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE